**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **HART FUELING SERVICES, LLC,**<br>Plaintiff,<br>*v.*<br>**CUDE OILFIELD CONTRACTORS, INC.,**<br>Defendant. | **CIVIL ACTION**<br>**NO. 2:26-cv-1737-KSM** |

**MEMORANDUM**

**MARSTON, J.** **October 30, 2026**

Plaintiff Hart Fueling Services, LCC ("Hart Fueling" or "Plaintiff") brings this breach of contract action against Defendant Cude Oilfield Contractors, Inc. ("Defendant" or "Cude") because of Cude's alleged failure to remit payment to Hart Fueling pursuant to a fueling services agreement between the parties. (Doc. No. 1.) Presently before the Court is Plaintiff's Motion for Service of Summons and Complaint by Publication. (Doc. No. 9.) For the reasons discussed below, we find that Plaintiff has failed to demonstrate that it has made a good faith effort to locate and serve Cude. Accordingly, we deny Plaintiff's motion without prejudice.

## I. FACTUAL BACKGROUND

Plaintiff filed this lawsuit against Defendant on March 17, 2026. (*See* Doc. No. 1.) Plaintiff alleges that Cude breached the parties' fueling services agreement when it failed to pay Hart Fueling under the terms of the agreement. (*Id.* at 2–3.) However, Plaintiff has yet to effect service upon Cude.

Plaintiff has taken a few steps to locate and serve Cude. On April 1, 2026, using a process server, Plaintiff attempted to serve Cude at 1309 North Ave East, Shiner, Texas 77984—Cude's last registered office address on a Tax Public Information Report. (Doc. No. 4-4.) The

process server was told that 1309 North Ave East was a law office whose tenants had no knowledge of Cude. (*See id.*) Plaintiff alleges that it also attempted to serve Cude at 149 Lily Green Court, Conroe, Texas 77304—a residential address associated with Lee Ann Peterson, Cude's registered president and director.[1] (Doc. No. 4-3.) On September 18, 2026, through a different process server, Plaintiff again attempted to serve Cude at 1309 North Ave East and reached Trent Nichols, an attorney who had previously represented the Defendant. (Doc. No. 8.) Mr. Nichols told the process server he was no longer the registered agent for Cude and could not accept service. (*Id.*)

Following the unsuccessful attempts, Plaintiff filed a motion requesting additional time to serve Defendant, which the Court granted. (Doc. Nos. 4 and 6.) On September 25, 2026, the process server located and attempted to serve Cude at five different suites (124, 100, 240, 400, and 400-1) at 100 Interstate 45 North, Conroe, Texas 77301. (*See* Doc. No. 5.) The process server was told that Cude moved from Suite 400 to Suite 124. (*Id.*) The building's leasing manager told the process server that she "knows Lee Ann Peterson is not in her office and has an office in Houston." (*Id.*) Plaintiff alleges it has, in total, "attempted service at seven (7) separate addresses since filing the Complaint." (Doc. No. 8.)

On October 23, 2026, Plaintiff filed the instant motion requesting to serve the Summons and Complaint via publication. (Doc. No. 9.) Plaintiff contends that it has been diligent in attempting to locate and serve the Defendant. (*Id.* at 2.) Plaintiff now moves for an Order

---

[1] It appears that Plaintiff attempted to forward the Complaint to Defendant by certified mail. While Plaintiff does not allege as such, it attaches a mailing envelope as proof of attempted service. (Doc. No. 4-3.) The mailing envelope, however, shows it was mailed on January 9, 2026 and returned as "unclaimed" on February 2, 2026—both before the instant action was filed in this Court. (*Id.*) In addition to other reasons discussed here, the Court finds that an envelope dated before this action began does not provide a sufficient showing that a good faith effort was made to serve Cude at Ms. Peterson's residential address.

permitting alternative service of the Complaint by publishing a notice in "The Courier Newspaper for Montgomery County, Texas once each week for four (4) consecutive weeks." (*Id.* at 4.)

## II. LEGAL STANDARD

A corporation, such as Cude, must be served "by delivering a copy of the summons and of the complaint to an officer, manager or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B); *see also Deutsche Bank Nat'l Tr. Co. v. Marjer, Inc.*, No. 14cv2422, 2014 WL 5410203, at *2 (E.D. Pa. Oct. 24, 2014). Alternatively, a corporation may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A); *see also Deutsche Bank Nat'l Tr. Co.*, 2014 WL 5410203, at *2.

Although there is no federal rule providing an alternative for service of process, Federal Rule of Civil Procedure 4(e)(1) allows service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."[2] *See id.*; *see also* Fed. R. Civ. P. 4(h)(1)(A) (referring to Fed. R. Civ.

---

[2] Because Federal Rule of Civil Procedure 4(e)(1) allows a plaintiff to serve a defendant pursuant to the law of the state in which the district court sits, we note that Pennsylvania Rule of Civil Procedure 424 outlines the Commonwealth's requirements for serving a corporation. Under that rule, service on a corporation may be made by personally serving the summons and complaint to (1) an executive officer, partner, or trustee of the corporation; or (2) the manager, clerk, or other person for the time being in charge of any regular place of business or activity of the corporation; or (3) an agent authorized by the corporation in writing to receive service of process for it. *See* Pa. R. Civ. P. 424; *see also Tillman v. Fed. Home Loan Mortg. Corp.*, No. 12-cv-3260, 2013 WL 1482209, at *1–2 (E.D. Pa. Apr. 10, 2013).

Federal Rule of Civil Procedure 4(e)(1) also allows a plaintiff to serve a defendant pursuant to the law of the state where service is made, and here, service was attempted in Texas. Texas Rule of Civil Procedure 106 permits service either by "(1) delivering to the defendant, in person, a copy of the citation, showing the delivery date, and of the petition; or (2) mailing to the defendant by registered or certified mail, return receipt requested, a copy of the citation and of the petition." Tex. R. Civ. P. 106(a).

P. 4(e)(1)); Fed. R. Civ. P. 4(e)(1). In Pennsylvania, if in-person service on a party or her agent is not possible, Pennsylvania Rule of Civil Procedure 430 allows "the plaintiff [to] move the court for a special order directing the method of service. The motion [must] be accompanied by an affidavit stating the nature and extent of the investigation which has been made to determine the whereabouts of the defendant and the reasons why service cannot be made." Pa. R. Civ. P. 430(a); *see also* Tex. R. Civ. P. 106(b) (authorizing alternative service upon court order).

"Alternative service is only appropriate as a 'last resort' when regular service cannot be made." *Deutsche Bank Nat'l Tr. Co.*, 2014 WL 5410203, at *3 (citations omitted). As such, "the plaintiff must establish that service cannot be made before it will be permitted to serve the defendant by an alternative method." *Id.* To satisfy this standard, the plaintiff first must demonstrate that it has made a good faith effort to locate and serve the defendant. *See* Pa. R. Civ. P. 430(a), note; *Deutsche Bank Nat'l Tr. Co.*, 2014 WL 5410203, at *3; *see also Calabro v. Leiner*, 464 F. Supp. 2d 470, 472 (E.D. Pa. 2006). "Good faith efforts [to locate the defendant] require more than 'a mere paper search.'" *Deutsche Bank Nat'l Tr. Co.*, 2014 WL 5410203, at *3 (citations omitted). A good faith effort to locate the defendant includes taking such steps as making inquiries of the Post Office; making inquiries of the defendant's relatives, friends, neighbors, and employers; examining public records such as telephone books, voter registration records, and motor vehicle records; hiring private investigators or skip tracer services; and conducting a reasonable Internet search.[3] Pa. R. Civ. P. 430(a), note; *Deutsche Bank Nat'l Tr. Co.*, 2014 WL 5410203, at *3. A good faith effort to serve the defendant includes such steps as attempting service on different days of the week and at different times of day. *Calabro*, 464 F.

[3] This list is neither exhaustive nor mandatory; a plaintiff need not take every listed action to demonstrate good faith, and actions not listed may contribute to a finding of good faith effort. *See Calabro*, 464 F. Supp. 2d at 472.

Supp. 2d at 472. "When a plaintiff fails to utilize most of these methods, he will not be able to show that regular service cannot be made." *Deutsche Bank Nat'l Tr. Co.*, 2014 WL 5410203, at *3 (quotation marks and citations omitted). In addition to demonstrating that it has made a good faith effort to locate and serve the defendant, the plaintiff must also show that "its proposed alternate means of service is 'reasonably calculated to provide the defendant with notice of the proceedings.'" *Id.* (citations omitted).

## III. DISCUSSION

### A. Good Faith Effort to Locate and Serve Defendant

Here, we find that Plaintiff needs to take additional steps to demonstrate a good faith effort to locate and serve Defendant. First, and most glaringly, Plaintiff does not indicate *any* attempt to visit Cude's registered address with the Texas Secretary of State (P.O. Box 131441, The Woodlands, Texas 77393) or the job site relevant to the parties' fuel service agreement (12310 Highway 87 East, Nixon, Texas 78140). *See id.* at *4 ("The process server never visited 842 Adams Court or 111 Regal Court, the property which is the subject of this action. Neither did the process server visit the physical location of the two P.O. Boxes or surveil any of the properties.").

Second, while Plaintiff alleges that it attempted to serve Cude's registered president and director at the 149 Lily Green Court address, the mailing envelope provided by Plaintiff as proof of service is dated January 9, 2026, before the instant action was filed in this Court. (*See* Doc. No. 4-3.) The envelope was returned to Plaintiff as "unclaimed/unable to forward" on February 2, 2026, also before the instant action was filed. (*Id.*) To date, Plaintiff has provided no evidence that it attempted to serve the Complaint personally to the 149 Lily Green Court address and makes no indication that it visited the neighboring residences to ask for information. The

Court therefore finds that Plaintiff has not provided sufficient evidence that it in fact attempted to serve Defendant at the 149 Lily Green Court address—either in person or by certified mail.

Third, while Plaintiff indicates that a process server attempted to serve Cude "twice" at five different suites in the 100 Interstate 45 North location, it did so on the same day, during lunch time, and less than twenty minutes apart: the first attempt was made on September 25, 2026 at 11:38 a.m., and the second attempt was made on September 25, 2026 at 11:55 a.m. (Doc. No. 5.) The process server was told that a receptionist "rarely sees anyone go in and out of Suite 124" and that Ms. Peterson was not in her office, but it is not clear to the Court based on Plaintiff's briefing that the process server concluded this was an incorrect address. Plaintiff indicates no further attempts to serve Cude at the 100 Interstate 45 North, Suite 124 location. *See Calabro*, 464 F. Supp. 2d at 473 ("Half-hearted attempts at service will not do. While the plaintiff, through the U.S. Marshal, has attempted service three times on the defendants, two were on the same day of the week—Tuesday, and the two that have listed times of attempted service took place around the same time of day, between 10:00 a.m. and 11:30. Aside from the fact that the U.S. Marshal knocked on the door three times (presumably with some force) and received no answer, there is no evidence that defendants are attempting to evade service; nor is there any other indication why future attempts at service, at different times or on different days, would be futile. Plaintiff has, therefore, failed to meet her burden of showing that she has undertaken practical efforts to serve the defendants under the circumstances.").

Fourth, Plaintiff does not purport to have conducted any Internet searches,[4] hired private investigators or skip tracers,[5] examined public records,[6] made inquiries to the Post Office, or called telephone directory services, among others. Plaintiff does not aver that it called telephone numbers associated with the Defendant despite attaching exhibits to its Complaint containing Ms. Peterson's business phone number and email address. (*See* Doc. No. 1-1 at 1.) Additionally, Plaintiff received information that Ms. Peterson had an office in Houston, Texas (*see* Doc. No. 5), but Plaintiff does not indicate that it undertook any effort to locate Ms. Peterson's Houston office.

Finally, Plaintiff does not indicate it made inquiries about Cude's corporate officers, partners, or agents—other than Ms. Peterson—who may have been capable of accepting service on behalf of Defendant, such as Benny Cude Jr., Cude's Chief Executive Officer, and James McCoy, Cude's Vice President of Operations. *See Tillman*, 2013 WL 1482209, at *2 (finding that the plaintiff—who made two Freedom of Information Act inquiries to the Post Office and searched three Internet databases—did not make a good faith effort at locating the defendant, since he did not indicate that he "attempted to locate any of E & D's [the defendant

---

[4] It may be that Plaintiff conducted an extensive Internet search that included the types of searches identified in Rule 430(a), but "there is nothing in the record that supports that conclusion." *FMM Bushnell, LLC v. Gilbert Commons*, No. 3:14-cv-1718, 2015 WL 737577, at *4 (M.D. Pa. Feb. 20, 2015); *see also Grove v. Guilfoyle*, 222 F.R.D. 255, 257 (E.D. Pa. 2004) ("[T]he Rules do not permit alternative service to issue on the basis of assumptions and likelihoods."). The only online source Plaintiff seems to have consulted is a business organization inquiry on the Texas Secretary of State's website. (*See* Doc. No. 4-2.)

[5] Plaintiff indicates that it hired two private process server companies, Falcon Express Services, LLC, and Whitesell Process Service of Rockill. (Doc. No. 9 at 1–2.) Plaintiff does not purport that the private process server companies conducted searches akin to private investigators or skip tracers.

[6] The *only* public records Plaintiff purport to have checked is a Texas Franchise Tax Public Information Report. (*See generally* Doc. No. 4-1.) Plaintiffs do not aver that they have checked other public records, such as court records for previously filed litigation.

corporation's] executive officers, partners, trustees, or managers that are capable of accepting service on behalf of E & D, or that he has examined any public records to identify such individuals"); *accord Deutsche Bank Nat'l Tr. Co.*, 2014 WL 5410203, at *1 ("Since then, Deutsche Bank has conducted searches to identify addresses where Marjer's president may be located. But, it did not sufficiently pursue those leads."). Tellingly, a reasonable Internet search returns a potential residential address in Goliad Texas for Mr. Cude, as well as active LinkedIn profiles for both Mr. Cude and Mr. McCoy.

For those reasons, the Court finds that Plaintiff has not demonstrated that it made a good faith effort to locate and serve Defendant.

**B. Proposed Alternative Means of Service**

For similar reasons, the Court cannot find that the alternative means of service proposed by Plaintiff is reasonably calculated to provide Cude with notice.

When requesting alternative service by publication, "'the plaintiff must specify the newspapers in which he intends to publish notice' so we can determine whether the proposed service by publication is reasonably calculated to reach the defendant." *Olympic Steel, Inc. v. Pan Metal & Processing, LLC*, No. 11cv6938, 2011 WL 6739447, at *3 (E.D. Pa. Dec. 21, 2011) (quoting *Barbosa v. Dana Capital Grp.*, No. 07cv1724, 2009 WL 902339, at *7 (E.D. Pa. Mar. 31, 2009)). The Court "will only permit service by publication if convinced 'that the published notice is placed where it is most likely to be seen by the defendant.'" *Id; see also Calabro*, 464 F. Supp. 2d at 471, n.3 (noting that "nearly all of the scarce case law addressing Pennsylvania Rule of Civil Procedure 430(a) involve plaintiff's request for publication *when the whereabouts of defendants is unknown*" and collecting cases in support (emphasis in original)).

Here, Plaintiff proposes to publish a notice in "The Courier Newspaper for Montgomery County, Texas once each week for four (4) consecutive weeks." (Doc. No. 9 at 4.) But Plaintiff has provided no reason why The Courier Newspaper is where the notice would most likely be seen by Defendant.[7] Instead, Plaintiff describes the means of alternative service as "the last remaining effort that can possibly put Defendant on notice of the above captioned action." (*Id.*) The Court disagrees. As described above, there are reasonable steps that Plaintiff has not yet taken to attempt to locate and serve Cude.

## IV. CONCLUSION

For these reasons, Plaintiff's motion to use alternative methods to effectuate service upon Cude is denied without prejudice. If additional efforts to serve Cude prove unsuccessful, Plaintiff may renew its motion provided it can show its proposed alternative method is reasonably calculated to reach Cude. An appropriate order follows.

---

[7] Per Plaintiff's briefing and the Court's reasonable Internet search, Defendant has potential addresses in Conroe, Shiner, The Woodlands, Houston, Goliad, and Nixon—some of which are outside of Montgomery County, Texas. Plaintiff provides no explanation as to why a notice in a newspaper serving Montgomery County (and mainly Conroe), where service was previously unsuccessful, would be most likely to be seen by the Defendant.